M'Kean, Chief Justice.
The Plaintiff states that the Defendants owe him £ 100, and in order to prove his allegation, he produces their bond, dated on the 5th of January, 1779, payable five years afterwards, that is, on the 5th of June, 1784. In answer to this demand, the Defendants have pleaded Payment (which in such cases, is made the general issue by a law of this State) and they have shewn in support of their plea, that the bond in question was given in consideration of £ 500 of continental paper, lent by the Plaintiff to the Defendants, at their instance, when it was worth no more than at the rate of twenty continental dollars for one in specie. Upon these circumstances it is to be determined, how much, if any thing, the Plaintiff ought to recover in the present action.
In cases for which the positive law has clearly and expresly provided, it is the duty of Courts and Juries to be governed in their decisions, by the rule that is there prescribed; for Courts of Chancery, and the general principles of equity, can never be allowed to contradict or defeat the express provisions of a statute: And even where there is no Act of Assembly to direct us, the common law, recognized and ascertained by the adjudications of the Courts upon the same subject, often furnishes a guide to which we are bound to yield attention and obedience; for, the maxim is certainly just, that it is better the law should be determinate and fixed, although it were originally erroneous, than that it should be precarious and fluctuating, according to the different talents and dispositions of the Judges, who are appointed to administer it. But, in the present case, the positive law is silent; and, though many authorities in the books have been refered to, not one has been discovered, which is strictly analogous to the question under our immediate consideration. There is, indeed, an Act of Assembly, passed on the 21st of June, 1781, 2 State Laws 494. the 5th section of which seems to relate, in some degree, to the present controversy, when it enacts, that “all debts “&c. granted and contracted for by any deed, will &c. since the “1st day of January, 1777, which were expressed to be paid and
*259 "discharged in any foreign money, or in gold or silver money of a-“ny denomination, or in bullion, or in any commodity, and which “have not since been paid and satisfied or discharged, shall be “deemed,construed and taken to be yet due and owing from debtors “to creditors, in such money or other commodity, as in the said “contracts were expressed, and the same may be sued for and re“covered in any Court &c. in so much gold or silver money as shall “be equal in value to the debt or duty, according to the contract.” But the meaning of this section (and in the interpretation of laws, recourse must always be had to the meaning of the Legislature) is only this; that, where a contract had been made for payment in specie,
in foreign gold, in bullion, or in any specific commodity, the creditor is entitled to recover according to the stipulations of that contract. This therefore, does not reach the present point; for, although the bond is payable in hard money, the dispute arises upon the actual depreciation, which rendered £ 500, continental money of considerably less real value, at the time of entering into the Contract, notwithstanding the laws of the State had declared it to be equivalent to specie, of any denomination then circulating. If, indeed, this had been a bond for the payment of continental money, there is no doubt that, by the Act of Assembly just cited, only so much specie, as the £ 500 was really worth, could be recovered by the Plaintiff; but it is a bond for the payment of hard Money, in consideration of a loan of continental Money, and hence the difficulty occurs.
It is unnecessary to review all the authorities that have been read, from the different reports of decrees in chancery; which have, in general, proceeded upon the ground either of fraud, of surprize, of the suggestion of a falsehood, of the suppression of a truth, or of the unreasonable and unconscionable nature of the contract itself. The last of these being the only case that can be applicable to the subject before us, our enquiry is reduced to one point, to wit, whether the contract now litigated is so unreasonable in its nature, at to have become iniquitous, and, therefore, ought not to be countenanced in a Court of Justice? The arguments appear to be strong on both sides, particularly in the two cases, which have been opposed to each other, by the contending council. On the one hand, where a man has borrowed, £ 1000 in continental money which, before the day of payment, had unexpectedly risen seventy-sold in value, it would certainly he hard to compel him to return £ 70,000, for the use of the £ 1000 which he received: And, on the other hand, it is equally true, that where £ 500 continental money has been loaned in consideration of a bond for £ 100 specie, the lender can never claim any more than the last mentioned sum, though a change in the public credit and circumstances, should have made the £ 500 continental money equal to specie, and by that means he has sustained a loss of the difference between the two sums.
It is likewise to be considered that when the contract was entered into between the Plaintiff and Defendants, the paper medium of the United States was in a very fluctuating condition; and, though *260 the event has shewn the fallacy of the opinion, there were not wanting many good and intelligent men, who strongly maintained, that the continental money would eventually be redeemed, according to its nominal value. This far, however, is clear, that the law, at that time, did not acknowledge the current depreciation, so that the Defendant might legally have satisfied any specie debt, with the money which the Plaintiff had advanced. Nor was it then customary to lend merely for the interest; but a practice had prevailed of making loans upon bonds payable in dollars, or for bills of exchange payable in France; and, although very usurious and exhorbitant profits were thus accumulated, yet it is said (and I believe it to be true) that there was no law that could prevent, or suppress the mischief. Indeed, after much consideration, this Court entertains the opinion, that there would not be any thing illegal in taking a bond for £ 200 of the last state emission of bills of credit, when only 100 had been lent; for that paper-money is only made a tender and payment of debts due to the Commonwealth, and, in every other respect, must be considered merely as an article of merchandize. But the case before us, is of another nature; it is that of a bond payable in hard Money, given in consideration of a sum lent in continental Money, which the law then declared to be, in all cases, a good and sufficient tender and payment.
Since, therefore, we have no rule to guide us, but the exercise of a legal discretion, it may be proper to reflect, that it will be as inconsistent with equity to give too little, as to give too much. If the Plaintiff’s demand would amount to seventy or a hundred sold the value of the money he advanced, it would, perhaps, be wrong to allow it; but,whether a less, and what,sum would be an unreasonable profit, must depend upon a consideration of the advantage which the Defendant might have derived from the loan, the loss which the Plaintiff might have sustained, the length of the credit given upon the bond, and the possible insolvency of the obligors. These circumstances certainly entitle the Plaintiff to something more than the common interest of money;-what advance a Court of Chancery would decree, we cannot ascertain with precision; but, it seems, that more than double the sum, has been generally determined to be unreasonable and unconscionable.
The Court, upon the whole, are unanimously of opinion, that in an action of debt, brought upon a bond, and where the issue is joined upon a plea of payment, the Jury may, and ought to presume every thing to have been paid, which ex equo et bono, in equity and good conscience, ought not to be paid. Such is the current of the determinations in the Court of Chancery of England; and the same principle is recognized in the case of Moses and M'Parian; 2 Burr. 1005. for, though the Courts of Justice cannot alter or destroy the contract of the parties, they may interpose to render it conformable to reason, justice, and conscience.
Rush, and Bryan, Justices, concurred.
The Jury found a verdict for the Plaintiff in the sum of £ 76. 10. with six-pence costs.